# EXHIBIT A



3140 Neil Armstrong Blvd
Suite 203
Eagan, MN 55121 USA
(651) 452-0366

## FACTORING AGREEMENT

**THIS FACTORING AGREEMENT** (this "Agreement"), was made and executed as of the 5ᵗʰ day of April, 2009, by and between **WISCONSIN STAFFING SERVICES, INC.** a corporation under the laws of the state of Wisconsin (the "Client") and **ARA Inc. dba PAPERLESS STAFFING**, a Minnesota corporation (the "Factor").

1.  <u>Defined Terms</u>.  As used in this Agreement, the following terms shall have the meanings set out respectively after each (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

    (a)  "Accounts Receivable" shall mean and include accounts, contract rights, instruments, documents, chattel paper, general intangibles, returned or repossessed goods arising out of or relating to the sale of temporary staffing or similar services any time or from time to time, and all proceeds thereof.

    (b)  "Customer" means any corporation or other entity that purchases temporary staffing services from Client.

    (c)  "Event of Default" is defined in Section 18.

    (d)  "Funds Employed" shall mean gross Accounts Receivable outstanding on Factor's books less any balance outstanding in the Reserve Account to the credit of Client.  If the Reserve Account should show a debit balance, such debit balance shall be added to gross Accounts Receivable outstanding in determining Funds Employed.

    (e)  "Obligations" mean all obligations, liabilities and indebtedness of Client to Factor, now existing or hereafter incurred, direct or indirect, absolute or contingent, whether created under this Agreement, any supplement hereto or any other agreement between Client and Factor or otherwise, including without limitation, obligations owed by Client to others which Factor obtains by assignment.

    (f)  "Prime Rate" shall mean the latest "Prime Rate", which normally is published in the "Money Rates" section of *The Wall Street Journal* (or if such rate ceases to be so published, as quoted from such other generally available and recognizable source as Factor may select).

    (g)  "Purchase Price" is defined in Section 4.

    (h)  "Reserve" is defined in Section 6.

    (i)  "Reserve Account" is defined in Section 5.

    (k)  "Solvent" shall mean that Client (i) owns property whose fair saleable value is greater than the amount required to pay all of its indebtedness (including contingent debts), (ii) is able to pay all of its indebtedness as such indebtedness matures and (iii) has capital sufficient to carry on its business and transactions and all business and transactions in which it is engaged.

    (j)  "UCC" shall have the meaning given in Section 8.

    (k)  "Early Termination" shall mean termination, revocation, or cancellation of this agreement prior to the date specified in Section 18.

© 2009, ARA Inc. d.b.a. Paperless Staffing. All rights reserved

Factoring Agreement 6.19.2008



(continued)

2.    Appointment. Except as provided herein, Client appoints Factor as its sole factor with respect to all sales of temporary staffing services to Customers and hereby offers to sell and assign only to Factor, as absolute owner, all Accounts Receivables arising out of such sales or services, including all such sales or services arising under any trade names or through any division or selling agent. The assignment of Accounts Receivable to Factor shall vest in Factor all of Client's rights, securities, guaranties and liens with respect to each Account Receivable, including any rights of stoppage in transit, replevin, reclamation, and any claims of lien filed by Client or held by Client on personal property, and all of Client's defenses and rights of offset with respect to any payments received by Factor on Accounts Receivable, but Factor shall not be obligated to, and shall not be liable for, exercising or refusing to exercise any rights granted to Factor hereby.

3.    Purchase of Accounts Receivable. Factor agrees to purchase from Client at the office of Factor all Accounts Receivable first approved by Factor in writing as to credit risk and terms of sale. From time to time, Client may provide Factor with a list of Accounts Receivable that it desires Factor to purchase, in the form attached hereto as Exhibit A and attach thereto copies of all contracts which give rise to the Accounts Receivable. Factor shall at all times have the absolute right in its sole discretion to reject any of the Accounts Receivable. All orders from Customers including the amount and terms of each proposed sale or service to Customers shall be submitted in advance of purchase or rendition of service to Factor for prior written approval, which may be granted or withheld at Factor's sole discretion. Factor's approval is subject to withdrawal either orally or in writing at any time prior to rendition of services, and shall be deemed no longer effective in any event if Client's rendition of services is made more than thirty 30 days beyond the date specified for such rendition in the terms of sales submitted to Factor for its approval, or more than thirty 30 days from the date of Factor's approval if no rendition date has been specified. Each purchase of an Account Receivable by Factor shall be with full recourse to Client, and Client agrees to pay Factor on demand for each Account Receivable if Customer fails to pay within 90 days of the date a Client invoice is delivered.

4.    Purchase Price. The purchase price of each Account Receivable (the "Purchase Price") is the gross amount of the Account Receivable, less any discounts made available or extended to the Customer (which shall be computed on the shortest terms where optional terms are given), returns and allowances of any nature, and Factor's administrative fee. For purposes of determining amounts of advances on Purchase Price, Factor's commission shall be initially presumed to be the administrative fee specified in Exhibit C for accounts paid within 30 days. The actual commission shall be determined and the Reserve Account adjusted when payment is received by Factor. After purchase of an Account Receivable by Factor, a discount, credit, unidentifiable payment or allowance may be claimed solely by a Customer, and if not so claimed, such discount, credit, payment or allowance shall be the property of Factor.

5.    Client Reserve Account. Factor shall establish on its books in Client's name a reserve account (the "Reserve Account") which Factor shall credit with the gross amount of all Accounts Receivable purchased by Factor from Client and which Factor shall debit with all advances made to Client or on its behalf, as well as all credits, discounts available to Customers, anticipations earned by Customers, Commissions as defined in Section 14, and any other amounts chargeable to Client under this Agreement or any supplement hereto or any other agreement between Client and Factor. Factor shall furnish Client with a monthly statement of its Reserve Account, and, unless exception is taken to this statement in writing mailed to Factor within 30 days after receipt by Client, the monthly statement shall be deemed correct and conclusively binding upon Client.

6.    Remittance of Funds to Client. As Accounts Receivable approved by Factor and evidenced by invoices arise, Factor shall advance to Client the "Initial Reserve Released" consisting of the Purchase Price of Accounts Receivable purchased by Factor hereunder, less a reserve equal to the percentage amount specified in Exhibit C of all such unpaid Accounts Receivable (the "Reserve"); and if Client is receiving payroll services from Factor, then Factor may further deduct from such advance any applicable sales tax on such Accounts Receivable as well as amounts for payment of payroll taxes, child support and garnishments for the current payroll and other applicable deductions. In no event without Factor's express written approval shall an Account Receivable be purchased if such purchase would cause Funds Employed at any time to exceed The maximum Funds Employed in Exhibit C. Factor retains the right to increase the Reserve from time to time if, in Factor's discretion, the prospect of collection of the outstanding Accounts Receivable or any other indebtedness owing by Client to Factor, including any indebtedness with respect to unpaid



(continued)

Accounts Receivable, or the ability of Client to pay or perform its obligations under this Agreement or any other agreement with Factor, becomes doubtful or insecure, or additional reserves are necessary to protect Factor against returns, claims or defenses of Customers with respect to Accounts Receivables or any other contingencies. All advances and other Obligations owing to Factor, including any debit balance in the Reserve Account and any amounts owing by Client to Factor or any of its divisions for merchandise or services purchased from any other concern factored or financed by Factor or otherwise, are repayable by Client on demand and may be charged to the Reserve Account when due. On the next weekly processing date after an assigned Account Receivable is paid in full Client shall receive the "Final Reserve Released" equal to any balance owing from the Reserve.

      7.    <u>Warranties and Representations</u>. Client warrants and represents that each Account Receivable sold and assigned to Factor hereunder: (a) shall be genuine and valid and shall represent a completed delivery or performance in fulfillment in every respect of the terms, conditions and specifications of a bona fide, un-cancelled and unexpired sale or service in the ordinary course of business to a Customer which is not affiliated with Client in full compliance with the specifications of such Customer; (b) is enforceable for the full amount thereof and will be subject to no dispute or claim by the Customer in whole or in part as to price, terms, quality, quantity, offsets, counterclaims, contra accounts or any other defense of any other kind and character, real or claimed; (c) will be subject to no discounts, deductions or allowances or no special terms of payment which are not shown on the face of the invoice thereof; (d) is payable in United States Dollars and has been invoiced to the Customer by an invoice that bears notice of the sale and assignment to Factor in compliance with the terms of this Agreement; and (e) is free and clear of prior liens or encumbrances.

      8.    <u>Collateral</u>. As security for the Obligations, Client grants Factor a security interest in Client's business assets, including, without limitation, all accounts, contract rights and other rights to payment, and all proceeds of the foregoing. Unless otherwise defined herein or the context requires otherwise, terms herein shall have the respective meanings ascribed to them in the Uniform Commercial Code, Minnesota Statutes Chapter 336 (the "UCC"). During the term of this Agreement, Client shall not sell or assign, negotiate, pledge or grant any security interest in such business assets and proceeds thereof to anyone other than Factor, without Factor's prior written consent, except for any sales of inventory in the ordinary course of business. As further security for the Obligations, the Guaranty, in the form attached hereto as <u>Exhibit B</u> shall be executed and delivered to Factor.

      9.    <u>Invoicing</u>. All invoices for temporary staffing services rendered shall be prepared by Factor and shall bear a notice that they have been assigned to, are owned by and are payable directly and only to Factor. Each invoice shall bear the terms of sale and no change from the original terms of sale shall be made without Factor's prior written consent. Factor reserves the right to mail original invoices to Customers at Client's expense; however, mailing, sending or delivery by Factor of a bill or invoice shall not be deemed to be any representation by Factor with respect thereto.

      10.    <u>Payment of Accounts Receivable</u>. All payments of Accounts Receivable and other payments on behalf of Client received by Factor shall be credited to Client's account. No check, draft or other instrument received by Factor shall constitute final payment unless and until such check, draft or other instrument shall have been actually collected by Factor in immediately available funds. Notwithstanding the foregoing, for purposes of determining the date of payment and for purposes of calculating the applicable interest, subject to Section 15 hereof the date on which Factor receives payment shall be determinative unless the payment is subsequently dishonored, in which case the applicable date shall be the date on which the payment is actually collected in immediately available funds.

      11.    <u>Remittances</u>. Any remittances received by Client with respect to Accounts Receivable purchased by Factor shall be held in trust for Factor, and Client shall immediately deliver to Factor the identical checks, drafts, monies or other forms of payment received, and Factor shall have the right to endorse Client's name on any check, draft or other form of remittance received, where such endorsement is required to effect collection. Client hereby appoints Factor or such person as Factor may name as its attorney-in-fact to execute all necessary documents in Client's name and do all things necessary to carry out this Agreement. Client ratifies and approves all acts of the attorney and agrees that neither Factor nor the attorney shall be liable for any acts of commission or omission nor for any error of judgment or mistake of fact or law. This power being coupled with an interest is irrevocable as long as Client is indebted to Factor in any manner.



(continued)

12.     Customer Disputes and Claims. Client agrees to notify Factor immediately of all disputes with and claims made by Customers and to adjust all such claims and disputes at its own expense, issuing credit memoranda promptly, but subject to Factor's approval. Factor may, but shall not be required to, allow a reasonable time for the settlement of disputes between Client and Customers without waiving Factor's right at any time to adjust any claims and disputes on an Account Receivable directly with the Customer and to charge back to the Reserve Account at any time the full amount of the Account Receivable involved. Factor may at any time charge the Reserve Account the full amount of: (a) any Account Receivable which is not paid in full when due for any reason (real or imaginary) within 90 days from the date of invoice; (b) any Account Receivable for which there is a breach of any of Client's warranties or representations set forth herein; and (c) any anticipation deducted by a Customer on any Account Receivable. Any such charge back shall not be deemed to constitute a reassignment of the Account Receivable, and Factor shall retain a security interest therein as security for all Obligations owing to Factor.

13.     Collection of Accounts. As owner of the Accounts Receivable, Factor shall have the right to (a) bring suit, or otherwise enforce collection, of the Account Receivable in the name of Client or Factor, (b) modify the terms of payment, settle, compromise or release, in whole or in part, any amounts owing, on terms Factor may deem advisable, and (c) issue credits in the name of Client or Factor.

14.     Commission. Client agrees to pay Factor a commission ("Commission ") as set forth in Exhibit C attached hereto.

15.     Interest. Client shall pay interest upon all Accounts Receivable at the close of business each day at a rate specified in Exhibit C. Interest will be calculated on a daily basis (computed on the actual number of days elapsed over a year of 365 days) and shall be charged to the Reserve Account weekly. The applicable Prime Rate for the month hereof shall be the Prime Rate in effect on the last day of the month preceding the date of this Agreement and the applicable Prime Rate for each month thereafter shall the Prime Rate in effect on the last day of the preceding calendar month. In computing interest payable by Client under this Agreement and any supplement hereto, all Customer checks and other payments received by Factor may, at Factor's option, be deemed applied to the Obligations 5 days after the date of Factor's receipt.

16.     Financial Statements and Information; Inspections. Client shall furnish Factor with annual financial statements prepared by an independent certified public accountant acceptable to Factor and also furnish monthly financial statements and other financial information upon Factor's request. Client shall permit any representative of Factor to visit and inspect any of the properties of Client, to examine all books of accounts, records, reports and other papers, to make copies and extracts there from, and to discuss the affairs, finances and accounts of Client with its officers, employees, independent public accountants, creditors and depository institutions all at such reasonable times and as often as may be reasonably requested.

17.     Financial Condition. Client warrants that it is Solvent and shall remain Solvent during the term of this Agreement; that any financial statements delivered to Factor accurately and fairly state Client's financial condition; that there has been no material adverse change in Client's financial condition as reflected in the statements since the date thereof nor do the statements fail to disclose any fact or facts which might materially adversely affect Client's financial condition; that it is not subject to any outstanding state or federal tax liens; and there is no litigation pending or threatened, which taken in the aggregate if adversely determined, can reasonably be expected to have a material adverse affect on Client's financial condition.

18.     Term of Agreement; Termination. This Agreement shall take effect on the date of acceptance by Factor and shall remain in full force and effect until terminated: (a) by Client at any time after May 18th, 2012 upon the giving of not less than 30 days prior written notice of termination to Factor or (b) by Factor at any time upon the giving of not less than 30 days prior written notice of termination to Client, or, without notice if any of the following events (each, an "Event of Default") shall occur: (i) Client shall default in the payment of any of the Obligations on the due date thereof (whether due at stated maturity, on demand, upon acceleration or otherwise); (ii) any representation or warranty made in this Agreement or any supplement hereto, or in any other document executed in connection herewith, or any instrument,



certification or financial statement furnished in compliance with or in reference hereto or thereto, or in any other agreement between Client and Factor, shall prove incorrect or misleading in any material respect when made or furnished; (iii) Client shall fail or neglect to perform, keep or observe any covenant or agreement contained in this Agreement or any supplement hereto or any other agreement between Client and Factor; (iv) Client or any guarantor of the Obligations shall file or have filed against it a petition, answer or consent seeking relief under the United States Bankruptcy Code, as now constituted or hereafter amended, or any other applicable Federal or state bankruptcy law or other similar law, or a receiver, liquidator, assignee, trustee, custodian, sequestrator or similar official shall be appointed for Client or any guarantor of the Obligations or any substantial part of its or his property; (v) the occurrence of any event or condition which, alone or when taken together with all other events or conditions occurring or existing concurrently therewith, Factor determines (1) has or may be reasonably expected to have a material adverse effect upon Client's business, operations, properties, condition (financial or otherwise); (2) has or may be reasonably expected to have any material adverse effect whatsoever upon the validity or enforceability of this Agreement or any other agreement between Client and Factor; (3) has or may be reasonably expected to have any material adverse effect upon any security for the Obligations, Factor's liens therein or the priority of such liens; or (4) materially impairs the ability of Client to perform its obligations under this Agreement or any other agreement between Client and Factor, or the ability of Factor to enforce and collect the Obligations or realize upon any of the security for the Obligations in accordance with the terms of this Agreement or any other agreement between Client and Factor or applicable law; (vi) Client is no longer Solvent, or fails, closes, suspends, or goes out of business; or (vii) there is a change (by death or otherwise) in Client's principal stockholders or owners. Early Termination of this Agreement is available any time by Client provided Client enters into a software contract with TempWorks Software, Inc. until three years after the execution date of this factoring agreement at a licensing fee of $225 per user per month with a minimum of nine users and pays off the factoring balance in full.

19.     Effect of Termination. Upon the effective date of termination, all Obligations of Client to Factor shall become immediately due and payable without further notice or demand irrespective of any maturity dates established prior thereto. However, no such termination shall release or abrogate any security interest held by Factor in any collateral of Client until all of Client's Obligations to Factor, including commissions, interest and all costs, expenses and attorneys' fees as herein provided, are paid in full. In the event that Factor shall cease to act as factor for Client, Client agrees to furnish Factor with indemnity satisfactory to Factor that will protect Factor against possible charges to Client under the terms of this Agreement and with a release satisfactory to Factor of all claims Client may have against Factor and until Client does so, Factor may hold any positive balance remaining in the Reserve Account as security for all Obligations of Client to Factor. Client shall pay Factor upon demand all costs and expenses, including reasonable attorneys' fees, incurred by Factor to obtain or enforce payment of any Obligations due from Client to Factor or in the prosecution or successful defense of any action or proceeding concerning any matter arising out of or related to this Agreement, the factoring of the Client's Accounts Receivable by Factor, or any Obligations owing by Client to Factor.

20.     Lien Perfection. Client hereby irrevocably authorizes Factor and any person designated by Factor to file all financing statements provided for by the UCC and all other documents or instruments which may be required by law or which Factor may request to perfect its security interest pursuant to Section 8 hereof. Client agrees to cooperate with Factor in the filing, recording or renewal thereof, and to pay all filing and recording fees and expenses related thereto. Client shall authenticate, execute, acknowledge and/or deliver such other instruments as assurances as may reasonably be requested to effectuate the purposes of this Agreement. At Factor's option, this Agreement may be filed as a financing statement. Factor shall have all rights and remedies of a secured party under the UCC. If notice to Client of any intended disposition of collateral or any other intended action is required by law in a particular instance, such notice shall be deemed commercially reasonable if given at least 10 calendar days prior to the date of intended disposition or other action. All rights and remedies of Factor shall be cumulative and may be exercised singularly or concurrently, at Factor's option, and the exercise or enforcement of any one such right or remedy shall neither be a condition to nor bar the exercise or enforcement of any other.

21.     Preferences. Client shall indemnify and hold Factor harmless from any loss, damage or expense (including attorneys' fees) incurred by Factor as a result of a claim made at any time against Factor for the repayment or recovery of any amount received by Factor in payment of any Account Receivable by the payor or legal representative thereof (including a trustee in bankruptcy or assignee for the benefit of creditors) on the grounds of preference under the



provisions of the Bankruptcy Code or any other federal or state insolvency law. If such claim is ever made against Factor, in addition to all of Factor's other rights under this Agreement, Client shall pay to Factor on demand the full net face amount of any such Account Receivable, or if Factor so elects, Factor shall have the right to charge against the Reserve Account the full net face amount of any such Account Receivable, but such charge back shall not be deemed a reassignment thereof. The provisions of this Section 21 shall survive the termination of this Agreement and the payment in full of the Obligations.

22.   Notices. Any notices, demands, consents, or other writings or communications permitted or required by this Agreement shall be given overnight courier or certified mail, return receipt requested, addressed to the party to be notified as follows:  or to such other address as each party may designate for itself by notice given in accordance with this Section 22. Any written notice or demand that is not sent in conformity with the provisions hereof shall nevertheless be effective on the date that such notice is actually received by the noticed party.

    (a) If to Factor: ARA Inc. d.b.a. Paperless Staffing
                    Attention:  David Dourgarian
                    3140 Neil Armstrong Boulevard, Suite 203
                    Eagan, Minnesota 55121

    With copy to:  ARA Inc. d.b.a. Paperless Staffing
                    Attention:  Gregg Dourgarian
                    3140 Neil Armstrong Boulevard, Suite 203
                    Eagan, Minnesota 55121

    (b) If to Client: Wisconsin Staffing Services, Inc. d.b.a. Nicolet Staffing
                    Attention:  Lester Zunker
                    3611 Highway 47 North, PO Box 861
                    Rhinelander, Wisconsin 54504

23.   Miscellaneous. This Agreement, together with any supplement hereto, contains the entire agreement between the parties, and cannot be modified, altered, changed or amended except in writing. This Agreement is intended solely for the benefit of Factor and Client, and no other person or party (including any guarantor), is intended to be benefited hereby in any way. The captions in this Agreement are for convenience of reference only and shall not define or limit any of the terms or provisions hereof. Failure of Factor to exercise any rights granted to it hereunder upon any breach or default by Client shall not be deemed a waiver thereof in the event of further breaches or defaults. The remedies of Factor hereunder shall be deemed to be cumulative and not exclusive. This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns and shall become effective only from the date of Factor's written acceptance. This Agreement is made and accepted and shall be construed, interpreted and enforced in accordance with the laws of the State of Minnesota, without regard to conflict of law principles, and Client irrevocably consents and submits to the jurisdiction of state courts of, and federal courts in, the State of Minnesota, for the purpose of any suit, action or proceeding relating hereto.

24.   WAIVER OF JURY TRIAL. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, FACTOR AND CLIENT HEREBY WAIVE, IRREVOCABLY AND UNCONDITIONALLY, TRIAL BY JURY IN ANY ACTION BROUGHT ON, UNDER OR BY VIRTUE OF OR RELATING IN ANY WAY TO THIS AGREEMENT OR ANY SUPPLEMENT HERETO OR ANY OF THE OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH, OR ANY CLAIM, DEFENSE, RIGHT OF SETOFF OR OTHER ACTION PERTAINING HERETO, OR TO ANY OF THE FOREGOING.

25.   Special Covenants. For so long as any of the Obligations are outstanding, Client covenants that, unless otherwise consented to by Factor in writing, it shall comply with the covenants, if any, set forth in Exhibit D attached hereto.



(continued)

26.    Entire Agreement. This Agreement and the Exhibits or Schedules referred to herein, together with any addenda signed by the Parties constitute the entire agreement between Factor and Client with respect to the subject matter of this Agreement, and may only be modified by a written amendment or addendum signed by both Factor and Client.  No employee, agent, or other representative of either Factor or Client has authority to bind the other with regard to any statement, representation, warranty, or other expression unless it is specifically included within the express terms of this Agreement or a written addendum signed by an authorized representative of both Factor and Client.  All prior agreements, representations, statements, proposals, negotiations, understandings, and undertakings with respect to the subject matter of this Agreement are superseded by this Agreement.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on the day and year first above written.

CLIENT:

**WISCONSIN STAFFING SERVICES, INC.
d.b.a. NICOLET STAFFING**

By: Lester Zunker
Title: President
Date: 5/19/09

FACTOR:

**ARA, INC. dba PAPERLESS STAFFING**

By: David Dourgarian
Title: President
Date: 5.28.09



## EXHIBIT A
### Request for Sale of Invoices/Accounts Receivable

[SEPARATE AGING FOLLOWS]

### TOTAL AGING: $554,406.05

 The undersigned hereby requests that ARA Inc. d.b.a. Paperless Staffing purchase the above described Accounts Receivable, each and all of which are in compliance with the provisions of the Factoring Agreement by and between ARA Inc. d.b.a. Paperless Staffing and the undersigned.

By:_____

Its:_____

© 2009, ARA Inc. d.b.a. Paperless Staffing. All rights reserved           Page 8 of 11                          Factoring Agreement 6.19.2008



(continued)

## EXHIBIT B
## FORM OF GUARANTY


[SEPARATE DOCUMENT FOLLOWS]

© 2009, ARA Inc. d.b.a. Paperless Staffing. All rights reserved                                       Factoring Agreement 6.19.2008



(continued)

# EXHIBIT C
## COMMISSION SCHEDULE

"Commission" as set forth in this <u>Exhibit C</u> is equal to the Administrative Fee, plus Interest, plus a Minimum Weekly Adjusted Fee (if any), all as specified below.

Administrative Fee percentage shall be a percentage between 1.75% and 2.35% based on the tiers described below. The Administrative Fee shall be an amount equal to that percentage of the gross amount of Accounts Receivable assigned to Factor each week.

**Administrative Fee Percentage Tiers:**

| Total Invoicing / Week | Fee Percentage |
| --- | --- |
| $125,000.00 or less | 2.35% |
| $125,000.01 - $150,000.00 | 2.15% |
| $150,000.01 - $175,000.00 | 1.95% |
| $175,000.01 or more | 1.75% |

Interest shall be calculated per Section 15 at a rate equal to seven (7) percent per annum on all Accounts Receivable.

Minimum Weekly Adjusted Fee. If the Administrative Fee for a given week is less than the minimum of $100.00 the "Minimum", then Client shall pay a Minimum Weekly Adjusted Fee equal to the difference between the Minimum and the Administrative Fee.

**Reserve shall be 15%**

**Maximum Funds Employed amount is $850,000.00.**

© 2009, ARA Inc. d.b.a. Paperless Staffing. All rights reserved          Page 10 of 11                    Factoring Agreement 6.19.2008



# EXHIBIT D
## SPECIAL COVENANTS OF CLIENT

© 2009, ARA Inc. d.b.a. Paperless Staffing. All rights reserved                   Factoring Agreement 6.19.2008

# EXHIBIT B



3140 Neil Armstrong Blvd
Suite 203
Eagan, MN 55121 USA
(651) 452-0366

## CONTRACT ADDENDUM

THIS CONTRACT ADDENDUM ("Addendum"), was made and executed as of _____
by and between WISCONSIN STAFFING SERVICES, INC dba Nicolet Staffing, a corporation under the law
of the State of Wisconsin (the "Client") and ARA Inc., dba PAPERLESS STAFFING, a Minnesota corporation
(the "Factor") supplement and amends the Factoring Agreement ("Agreement") between the parties entered into
the 5th day of April, 2009.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows:

1. Client outstanding balance with Factor is currently $34,087.53. This balance will be paid to Factor over
   a 4-week period commencing on the date this Addendum is executed. Factor will withhold payments
   each week in the amount of $8522.51 from Client's "Initial Reserve Released."
   a. Factor will reimburse Client in the amount of $9000. This reimbursement shall be applied to
      Client's outstanding balance.

2. The Tiered Administration Fee outlined in Exhibit C of the Agreement shall be amended as follows:
   a. The Administrative Fee shall be 2.4% of the gross amount of Accounts Receivable assigned to
      Factor each week until Client's outstanding balance of $34,087.53 is satisfied. After Client's
      outstanding balance is paid, the Administration Fee shall be based on the tiers outlined below.
      This tiered fee structure shall remain in place until February 1, 2010, provided that Client does
      not default on any of the provisions of the Factoring Agreement.

| Total Invoicing per Week | Fee Percentage |
|---|---|
| $125,000 or less | 2.35% |
| $125,000-$150,000 | 2.15% |
| $150,000.01 or more | 2.1% |

3. Client shall reimburse Factor for any SUTA payments made by Factor to Michigan and Wisconsin, and
   any federal tax lien debt payments to the Internal Revenue Service on behalf of Client. Factor shall also
   pay Client's workers' compensation premium. Factor shall withhold from Client's "Initial Reserve
   Release" any amounts paid on behalf of Client.

4. Client shall provide Factor with the following documentation on a monthly basis:

   a. An Accounts Payable register listing Client's accounts payable payments; and
   b. A copy of Client's operational bank account statement from Northwoods Bank



Failure to provide this documentation on a monthly basis will result in either a discontinuance of service by Factor until the documentation is provided by Client or, at Factor's discretion, a cancellation of the Factoring Agreement to provide services to Client.

Factor shall examine the financial documentation provided by Client on a monthly basis.  If this documentation shows a gross loss for the month, Factor reserves the right to discontinue funding or renegotiate the Factoring Agreement.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on the day and year first above written.

**CLIENT:**                                              **FACTOR:**

**WISCONSIN STAFFING SERVICES, INC.**                    **ARA, INC. dba PAPERLESS STAFFING**
**d.b.a. NICOLET STAFFING**

By: Lester Zunker                                        By: David Dourgarian
Title: President                                         Title: President
Date: 10/19/09                                           Date:

# EXHIBIT C

**IRS** Department of the Treasury
Internal Revenue Service

IRS SSA CAWR
Philadelphia PA 19255-0533

009258.447811.70816.7228 2 MB 0.435 1390

WISCONSIN STAFFING SERVICES INC
PO BOX 861
RHINELANDER  WI  54501-0861

009258

CUT OUT AND RETURN THE VOUCHER IMMEDIATELY BELOW IF YOU ONLY HAVE AN INQUIRY.
DO NOT USE IF YOU ARE MAKING A PAYMENT.

CUT OUT AND RETURN THE VOUCHER AT THE BOTTOM OF THIS PAGE IF YOU ARE MAKING A PAYMENT,
EVEN IF YOU ALSO HAVE AN INQUIRY.

---

The IRS address must appear in the window.
0583000098

    BODCD-SB

Use for inquiries only

|  |  |
|---|---|
| Letter Number: | LTR0098C |
| Letter Date  : | 2014-05-23 |
| Tax Period   : | 201112 |

* �manhattan 6111 *

WISCONSIN STAFFING SERVICES INC
PO BOX 861
RHINELANDER  WI  54501-0861

INTERNAL REVENUE SERVICE
IRS SSA CAWR
Philadelphia  PA  19255-0533

---

6111 IK WISC 13 2 201112 640 00000000000

---

The IRS address must appear in the window.
0583000098

    BODCD-SB

Use for payments

|  |  |
|---|---|
| Letter Number: | LTR0098C |
| Letter Date  : | 2014-05-23 |
| Tax Period   : | 201112 |

* ▮ 6111 *

WISCONSIN STAFFING SERVICES INC
PO BOX 861
RHINELANDER  WI  54501-0861

INTERNAL REVENUE SERVICE

KANSAS CITY  MO  64999-0202

6111 IK WISC 13 2 201112 640 00000000000



**IRS** Department of the Treasury
Internal Revenue Service

IRS SSA CAWR
Philadelphia  PA   19255-0533

In reply refer to:  0583000098
May  23, 2014    LTR 98C  K3
█████6111   201112 13 00
Input Op:  0509905406 00014813
BODC: SB



WISCONSIN STAFFING SERVICES INC
PO BOX 861
RHINELANDER  WI  54501-0861

009258

Tax Year:  2011

Dear Taxpayer

Our records for the tax year listed above show that the totals you
reported on the following statements don't agree with the amounts you
reported on your tax return(s) for the same year. The information is
shown below.

Tax return(s) filed with IRS:

   Form 941 - Employer's Quarterly Federal Tax Return

| | | |
|---|---|---:|
| Total Social Security Wages from Forms 941 | $ | 8,174,464.17 |
| Total Social Security Wages on Forms W-2 | | .00 |
| Difference | | 8,174,464.17 |
| | | |
| Total Social Security Tips from Forms 941 | $ | .00 |
| Total Social Security Tips on Forms W-2 | | .00 |
| Difference | | .00 |
| | | |
| Total Medicare Wages from Forms 941 | $ | 8,174,464.17 |
| Total Medicare Wages on Forms W-2 | | .00 |
| Difference | | 8,174,464.17 |
| | | |
| Total Federal Income Tax Withheld from Forms 941 | $ | 613,271.75 |
| Total Federal Income Tax Withheld on Forms W-2/W2-G/1099R | | .00 |
| Difference | | 613,271.75 |
| | | |
| Total Advance Earned Income Credit (EIC) payments from Forms 941 | $ | .00 |
| Total Advance Earned Income Credit (EIC) on Forms W-2 | | .00 |
| Difference | | .00 |
| | | |
| Total Hiring Incentives to Restore Employment (HIRE) Act Exempt Wages from Forms    941 | $ | .00 |

```
                                                    0583000098
                           May  23, 2014      LTR 98C  K3
                           ████6111    201112 13 00
                           Input Op:   0509905406 00014814
```

WISCONSIN STAFFING SERVICES INC
PO BOX 861
RHINELANDER  WI  54501-0861

Total HIRE Act Exempt Wages
on Forms W-2                                             .00
Difference                                              .00

Potential Penalty Amount                  $      817,446.42

SSA has contacted you more than once about this matter, but you have
not provided the information necessary to resolve the difference. SSA
must have accurate information on employee earnings to figure employee
entitlement to Social Security benefits and the amount of those
benefits. In addition, the differences in the amounts reported may
change your tax. Failure to provide the correct W3/W2 information may
result in penalty assessment(s).

You may have filed an incomplete number of Forms W-2 with SSA, or sent
incomplete information to IRS on your employment tax returns. IRS must
receive and process accurate tax information submitted by taxpayers.

If you made a mistake on the statements you filed with SSA, please do
the following:
   1. Complete Form(s) W-2c, Corrected Wages and Tax Statement.
   2. Complete Form W-3c, Transmittal of Corrected Income and
      Tax Statement.
   3. Send us Form W-3c and Copy A of Form(s) W-2c with a copy of
      this letter in the enclosed envelope.
   4. Give a copy of Form W-2c to each affected employee.

If you correctly filed your statements with SSA and IRS, please
explain to us the difference between the statements and your tax
returns. Send your explanation with a copy of this letter.

The law (Section 6721(a) of the IRC) requires you to file Forms W-2
with the Social Security Administration by February 28 of the year
following the tax filing year. If these forms aren't CORRECTLY filed
by the due date, the law states that we can charge a penalty of $15,
$30, or $50 per return, based on the date we receive complete and
correct information. You must send any Forms W-2 filed in response
to this letter to us, at IRS, to ensure that your account and the
amounts of your employees are properly adjusted. THESE FORMS MUST BE
IN A LEGIBLE FORMAT THAT CAN BE PROCESSED.

Please send this material to IRS by July 09, 2014, to ensure that all
amounts are properly credited. If you previously reported wages or
taxable tips subject to tax incorrectly, we will advise the Social
Security Administration so your employees receive proper credit.

0583000098
May 23, 2014    LTR 98C⁺ K3
█████6111    201112 13 00
Input Op:   0509905406 00014815

WISCONSIN STAFFING SERVICES INC
PO BOX 861
RHINELANDER, WI   54501-0861



009258

When reviewing your account, ensure that any adjustments you make
don't put your account out of balance. Your account is out of balance
if the sum of the Forms 941 amounts doesn't equal the
Forms W-2 amounts. If your Forms W-2 totals are greater than your
941 totals, we may charge you additional tax. If your
Forms 941 totals are greater than Form W-2 totals,
we may charge you a penalty for failure to file the Form W-2.

The penalty for failure to file (Section 6721(e) of the IRC) the
Forms W-2 is $100 for each missing Form W-2 or other information
return or 10% of the total amount of income required to be reported on
the return, whichever is greater.

Any forms that you file in response to this letter must be sent to us
to ensure that your account and the accounts of your employees are
properly adjusted.

If you wish to send the information by fax, our fax number is
855-235-6790. Please include a cover sheet containing the following
information:

Date: _____
Your name: _____
Your Taxpayer Identification Number: _____
(Social Security Number/Employer Identification Number)
Tax Period: _____
Number of pages of faxed material: _____

If you have any questions, please call us toll free at 1-800-829-0115.

If you prefer, you may write to us at the address shown at the top
of the first page of this letter.

Whenever you write, please include this letter and, in the spaces
below, give us your telephone number with the hours we can reach you.
Also, you may want to keep a copy of this letter for your records.

Telephone Number (   )_____  Hours_____

Please note, that all information you provide must be sent to IRS
(not SSA) at the address shown at the top of this correspondence.
Failure to provide the information to IRS may cause your account to
be assessed additional taxes and/or penalties. Any information you
provide will be used to balance your account, and any forms you would
normally provide to SSA will be forwarded to them, after we complete
our review.

```
                                        0583000098
           May  23, 2014    LTR 98C   K3
           ████6111    201112 13 00
           Input Op:   0509905406 00014816
```

WISCONSIN STAFFING SERVICES INC
PO BOX 861
RHINELANDER  WI  54501-0861


Thank you for your cooperation.


                         Sincerely yours,


                         *Lisa Parker*

                         Lisa Parker
                         Operation Manager, Doc. Matching

Enclosures:
Copy of this letter
Envelope
Publication 3498-A