UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Wisconsin Staffing Services, Inc.,
d/b/a Nicolet Staffing,

      Plaintiff,

v.                                                                  Case No. 14-CV-1803 (JNE/HB)
                                                                    ORDER
ARA, Inc., d/b/a Paperless Staffing,

      Defendant.

This action involves a contract dispute between Plaintiff Wisconsin Staffing Services,

Inc. (WSS) and Defendant ARA, Inc. The matter is before the Court on ARA's motion for

summary judgment.

## BACKGROUND

ARA is a "factor," a business that purchases accounts receivable at a discount in

exchange for immediate payment of the discounted amount. The difference between the full

value of the account and the discount price is called an "administrative fee." Before selling its

assets at the end of 2012, WSS was a staffing agency that lent its employees to businesses in

need of temporary personnel.

On April 5, 2009, WSS and ARA entered into a Factoring Agreement under which WSS

sold and assigned its accounts receivable exclusively to ARA. Exhibit C to the Factoring

Agreement established a sliding scale for the administrative fee based on the gross amount of the

accounts receivable WSS assigned to ARA on a weekly basis. The fee ranged from 1.75% of the

accounts receivable to 2.35%. The agreement was signed by Lester Zunker as president of WSS

and David Dourgarian as president of ARA. The parties later agreed to an addendum under

which ARA would charge a 2.4% fee until WSS satisfied an outstanding balance. The addendum

further provided that, once the balance was satisfied, a sliding scale fee ranging from 2.1% to 2.35% would remain in place until February 1, 2010. The February 1 date passed and WSS eventually satisfied the balance, but ARA continued to charge WSS administrative fees higher than those stated in Exhibit C of the Factoring Agreement. In December 2012, WSS sold its assets and stopped sending accounts receivable to ARA.

On June 5, 2014, WSS filed this action. Count 3 of the complaint alleges ARA breached the contract by charging administrative fees higher than those stated in the Factoring Agreement. Count 7 seeks an accounting for the funds ARA collected on the accounts receivable. ARA answered and filed a counterclaim for breach of contract, alleging that WSS breached its contractual obligation to provide thirty days' written notice prior to terminating the Factoring Agreement. On April 10, 2015, ARA moved for summary judgment with respect to Counts 3 and 7 of the complaint and ARA's counterclaim.

For the reasons provided below, the motion is granted with respect to Count 7 of the complaint and denied in all other respects.

## STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must view facts

that the parties genuinely dispute in the light most favorable to the nonmovant, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009), and draw all justifiable inferences from the evidence in the nonmovant's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

### A.  Count 3: WSS's Breach of Contract Claim

To prevail on a breach of contract claim under Minnesota law, a plaintiff must show: (1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a breach of the contract by defendant; and (4) damages. *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 703 F.3d 1104, 1107 (8th Cir. 2013).[1] WSS argues that ARA breached the contract by charging administrative fees higher than those in the Factoring Agreement. ARA does not dispute that the administrative fees it charged for over two years were higher than those in the agreement. Instead, ARA argues that the fees in the agreement were modified or waived in favor of a permanent 2.4% rate.

#### 1.  Modification

"A modification of a contract is a change in one or more respects, which introduces new elements into the details of the contract . . . but leaves the general purpose and effect undisturbed." *Sokol & Assocs., Inc. v. Techsonic Indus., Inc.*, 495 F.3d 605, 610 (8th Cir. 2007) (internal quotation marks omitted). Minnesota allows modification of a contract by the parties' acts and conduct. *Id.* However, "allegations of modifications inconsistent with the written terms of a contract are subject to rigorous examination." *Id.* (internal quotation marks omitted).

ARA argues that the parties agreed to modify the fee structure in the Factoring Agreement by replacing it with a permanent, across-the-board 2.4% rate. ARA alleges that WSS

---

[1]     The 2009 Factoring Agreement states that Minnesota law applies to the contract, and neither party argues for the application of a different state's law.

orally agreed to this modification but, because WSS disputes this fact, ARA bases its motion on the conduct of the parties. Specifically, ARA attests that, "[e]very week following performance of the addendum in the spring of 2010, WSS would offer its accounts receivable for sale to ARA, and every week ARA would purchase them for face value less its 2.4% administrative fee. The parties continued to perform in this manner through December of 2012." ARA argues that, by continuing to send its accounts receivable to ARA with full knowledge that ARA was charging a 2.4% fee, WSS agreed to modify the fee structure.

WSS concedes it knew ARA was charging rates higher than those in the 2009 Factoring Agreement, but it disputes the factual assertion that ARA consistently charged 2.4%. WSS points to a spreadsheet, purportedly prepared by ARA, which shows that from February 2010 through December 2012 the rates fluctuated significantly. Based on this spreadsheet, WSS calculates that ARA charged a 2.39% or 2.4% fee for more than half of the 151 weeks, a 2.35% fee for nearly one-third of the weeks, and fees consistent with Exhibit C of the Factoring Agreement for ten weeks. A separate spreadsheet prepared by WSS shows somewhat different numbers but also reflects a fluctuating fee that was often but not always 2.4%.

The terms of an alleged modification to a contract must be sufficiently definite for a court to know what it is being asked to enforce. *See Holt v. Swenson*, 90 N.W. 2d 724, 728 (Minn. 1958); *Wormsbecker v. Donovan Constr. Co.,* 76 N.W. 2d 643, 649 (Minn. 1956). ARA has taken the position that the fees in the written contract were modified and replaced with a permanent rate of 2.4%. ARA has offered no other explanation for what the definite terms of the modified fee arrangement might be. WSS has pointed to evidence calling into doubt ARA's assertion that the original fee structure was replaced with a definite 2.4% rate. Because there is a

genuine factual dispute over whether the parties agreed to a definite and enforceable modification of the administrative fee, summary judgment is inappropriate on these grounds.

     *2.   Waiver by Conduct*

ARA also argues that WSS, by its conduct, waived its contractual right to the original fee schedule. "[W]aiver is the intentional relinquishment of a known right." *Valspar Refinish, Inc. v. Gaylord's Inc.,* 764 N.W. 2d 359, 367 (Minn. 2009) (internal quotation marks omitted). "[A] valid waiver requires both (1) knowledge of the right and (2) an intent to waive the right." *Best Buy Stores, L.P. v. Benderson-Wainberg Associates, L.P.*, 668 F.3d 1019, 1030 (8th Cir. 2012). Knowledge of the waiver may be actual or constructive, and the intent to waive may be inferred from conduct. *Id.* However, "[w]aiver generally is a question of fact, and '[i]t is rarely to be inferred as a matter of law." *Valspar,* 764 N.W. 2d at 367 (quoting *Farnum v. Peterson-Biddick Co.*, 182 Minn. 338, 341 (1931)).

WSS argues that it did not intend to waive its right to the fee structure in the 2009 Factoring Agreement and points to evidence showing that, beginning in March 2010 and continuing through January 2011, it objected or intended to object to the increased rates charged by ARA. Zunker testified at deposition that he talked to Dourgarian's general manager about the higher rates, and WSS's accounting manager repeatedly raised the issue through emails to ARA employees.[2]

---

[2]     For example, on June 22, 2010, WSS's accounting manager sent to ARA an email with an attachment that listed the increased rates ARA was charging WSS and stated: "At the end of February should have gone to the 'sliding percentage' for admin fee." In addition, on July 8, 2010, she sent an email to an ARA employee stating, "I still need it verified that the initial fee is based on the sliding scale that was implemented by contract."

Because there is evidence WSS objected to the higher rates for nearly a year after they were imposed, a reasonable fact finder could find that WSS did not intend to waive its contractual right. Summary judgment is thus inappropriate on these grounds as well.

3.  *Waiver under the Factoring Agreement*

ARA also argues that WSS waived the original administrative fee schedule under the terms of the Factoring Agreement. The agreement states: "Factor shall furnish Client with a monthly statement of its Reserve Account, and, unless exception is taken to this statement in writing mailed to Factor within 30 days after receipt by Client, the monthly statement shall be deemed correct and conclusively binding upon Client." ARA argues that WSS did not object to the monthly statements and thus WSS became bound by the statements. WSS maintains that ARA never furnished the requisite statements. Instead, WSS's accountant attests in an affidavit that she "generated weekly funding reports from an online system maintained by ARA's affiliated entity."

ARA does not dispute this account of how WSS obtained the funding reports and does not dispute that the funding reports were not generated on a monthly basis. Furthermore, ARA points to no evidence showing that the data presented to WSS constituted a "statement" within the meaning of the contract. In short, ARA has not shown that whatever it may have furnished to WSS was both "monthly" and a "statement," as necessary to trigger WSS's obligation to take exception to the statements before they became binding.

4.  *Account Stated*

Finally, ARA relies on the doctrine of the account stated, under which a "party's retention without objection for an unreasonably long time of a statement of account rendered by the other party is a manifestation of assent." *Am. Druggists Ins. v. Thompson Lumber Co.*, 349

N.W.2d 569, 573 (Minn. App. 1984). WSS argues that the doctrine is inapplicable for two

reasons. First, account stated is a cause of action, not a defense, and ARA has not brought a

claim for accounted stated. Second, there was no opportunity for WSS to review a bill and,

through its silence, agree to the amount owed because the online reports showing the charged fee

were available to WSS only after ARA had purchased WSS's accounts receivable and

unilaterally taken the fee it felt it was owed.  In its reply, ARA does not respond to these

arguments or otherwise address the applicability of the doctrine to this matter, indicating

acquiescence to the arguments that the doctrine is inapplicable.

### B.  Count 7: WSS's Accounting Claim

 ARA moves to dismiss WSS's accounting claim because it is an equitable claim and

WSS has an adequate remedy at law. WSS does not respond to ARA's motion with respect to the

accounting claim. Accordingly, WSS is deemed to have abandoned this claim. *See Trnka v.*

*Biotel, Inc.,* Civ. No. 07–1206, 2008 WL 108995 at *3 n. 4 (D. Minn. Jan. 9, 2008).

### C.  ARA's Breach of Contract Counterclaim

ARA argues that WSS breached the contract by failing to provide timely written notice of

termination. The agreement provides that, after May 18, 2012, WSS could terminate the

agreement "upon the giving of not less than 30 days prior written notice of termination to

Factor."

WSS insists that it did not violate the notice provision because it did not in fact terminate

the agreement. The agreement provides that WSS must "sell and assign only to [ARA], as

absolute owner, all Accounts Receivables arising out of [its] sales or services." WSS asserts that,

after it sold its assets at the end of December 2012, it had no accounts receivable to assign to

ARA. It maintains that it never terminated the agreement with ARA but simply ceased selling

and assigning accounts receivable because it had none to assign. If WSS is correct that it did not

terminate the agreement, then it could not have breached the contract's requirement for how to

provide proper notice of termination.

ARA does not dispute that WSS sold its assets and does not argue that the sale of WSS's

assets automatically terminated the agreement. Rather, ARA argues that Zunker, on behalf of

WSS, orally terminated the agreement during a December 2012 conference call. ARA cites to

Dourgarian's deposition testimony about the call, in which he stated: "[Zunker] told me that the

factoring agreement with [ARA] was over. That I wasn't getting bought out. That he had sold the

assets of the company to Charlie Barnes—to Staffworks[—]and that he wouldn't be submitting

any more invoices for factoring."

While WSS does not directly dispute this testimony, the testimony itself does not

unambiguously show WSS terminated the agreement. The statement that the agreement "was

over" is perhaps consistent with termination, but the statement that WSS "wouldn't be

submitting any more invoices for factoring" is consistent with WSS's position that it did not

terminate but simply stopped sending accounts receivable to ARA.

Moreover, even if WSS terminated the agreement and did not follow the proper

termination procedures, ARA has not shown it suffered any damages. "[U]nder Minnesota law, a

breach-of-contract claim fails as a matter of law without a showing of damages." *Hinz v.

Neuroscience, Inc.*, 538 F.3d 979, 987 (8th Cir. 2008). WSS insists that it continued to sell its

accounts receivable to ARA through the end of 2012, at which point WSS sold its assets and had

no more accounts receivable to send to ARA. ARA does not dispute that WSS had no accounts

receivable after WSS sold its assets. While the contract provided that WSS must send its

accounts receivable exclusively to ARA, ARA does not argue that WSS was obligated to send

8

accounts receivable if it had none. ARA nevertheless asks the Court to award it damages of

$19,173.90, ARA's average monthly profit under the agreement. However, as ARA explains in

its brief, "Factors realize profit through buying accounts at a discount." ARA fails to explain

how it reasonably expected to earn any money, let alone an average monthly profit, from WSS

during a period in which ARA could not buy accounts from WSS because WSS had none to sell.

On the record before the Court, summary judgment on ARA's breach of contract

counterclaim is inappropriate because there is a genuine factual dispute over whether WSS

terminated the agreement and ARA has failed to explain how it was damaged by any breach.[3]

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1. Defendant's motion for summary judgment [Docket No. 23] is GRANTED IN PART

    and DENIED IN PART as follows:

    a.  The motion is granted with respect to Count 7 of the complaint and that claim

        is dismissed.

    b.  In all other respects, the motion is denied.

Dated: June 3, 2015                                   s/Joan N. Ericksen
                                                      JOAN N. ERICKSEN
                                                      United States District Judge

---

[3]     Because the Court finds that summary judgment is inappropriate for these reasons, the
Court finds it unnecessary to examine WSS's other arguments for why ARA's motion should
fail.